United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN C. NOCHE, | No. C 05-0469 CRB (PR) |
| Petitioner, | **MEMORANDUM AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| v. | |
| D. L. RUNNELS, Warden, | |
| Respondent. / | |

On November 28, 2001, Petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of Alameda of two counts of second-degree robbery (Cal. Penal Code § 211), two counts of assault with a semiautomatic firearm (Cal. Penal Code § 245(b)), one count of vehicle theft (Cal. Veh. Code § 10851), and one count of discharging a firearm at an occupied vehicle (Cal. Penal Code § 246). The jury also found to be true allegations that Petitioner had personally used a firearm in the commission of the robberies and assaults (Cal. Penal Code §§ 12022.5, 12022.53(b)). The trial judge found to be true allegations that Petitioner had suffered two prior felony "strike" convictions (Cal. Penal Code § 667), one for robbery (Cal. Penal Code § 211) and the other for assault with a semiautomatic firearm on a peace officer (Cal. Penal Code § 245(d)(2)), and had served a prior prison term. On March 11, 2002, the trial court sentenced Petitioner to 104 years to life in state prison–a sentence consisting of a total determinate term of 29 years followed by three consecutive terms of 25 years to life imposed under California's Three Strikes Law.

On August 18, 2003, the California Court of Appeal affirmed the conviction but remanded Petitioner's case for reconsideration of the sentence. The appellate court concluded that the trial court had miscalculated the original sentence primarily because it improperly combined determinate and indeterminate sentences. Petitioner sought review in the Supreme Court of California. The state high court denied review on October 29, 2003.

On August 30, 2004, Petitioner was re-sentenced in the trial court to a term of imprisonment of 158 years to life.

Petitioner filed a timely Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on February 1, 2005.

Per order filed on April 18, 2005, the Court found that the petition, when liberally construed, appeared to state three cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer to the Court's order to show cause. Petitioner did not file a traverse.

**FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> The charges against Noche stemmed from a number of incidents in July 2000.
>
> **1. July 3 Assault on Stixrud and Wright (Counts Three, Four, & Six)**
>
> Pamela Stixrud (Stixrud) was driving in the fast lane on the San Mateo Bridge on July 3, 2000, when she approached a white Mitsubishi Eclipse from behind. Her boyfriend, Anthony Wright (Wright), was in the passenger seat. The driver of the Eclipse applied his brakes and moved to another lane. As Stixrud's vehicle passed, the driver of the Eclipse gestured, Wright said something to him, and the Eclipse swerved toward Stixrud's Honda. A short time later, Stixrud and Wright heard the sound of a gunshot and witnessed the driver of the Eclipse pointing a silver or chrome weapon in their direction. They heard two more shots before the Eclipse sped ahead and exited the freeway.
>
> Stixrud and Wright reported to the California Highway Patrol the Eclipse's license plate number and described its driver as an Asian or Filipino male with spiked hair. Three small-caliber bullet holes, one on the rear bumper and two on the panel under the passenger door, were located on Stixrud's vehicle.

### 2. July 5 Robbery of Fremont Bank (Count One)

On July 5, 2000, Fang Tan was working as a teller at Fremont Bank in Fremont. She testified that an Asian man, about five feet five inches tall and weighing roughly 150 pounds, with black hair that was spiky on top and short on the sides, set a chrome semiautomatic gun and an envelope on the counter. He demanded all of her 20, 50, and 100-dollar bills. After Tan gave him the money from her top cash drawer, he picked up the gun, pointed it at her, and demanded more. She complied, giving him three to four thousand dollars in large denomination bills from her second cash drawer. The robber then left the bank. Tan wrote down his description and identified the culprit from the bank's surveillance tape. The next day, Tan identified Noche as the robber from a photographic lineup.

### 3. July 6 Robbery of Bank of the West (Count Two)

Around 4:30 p.m. on July 6, 2000, Amisha Amin was working as a teller at a Bank of the West branch in Fremont. As she was bent down at her teller window, counting money, Amin heard a man say in an angry voice, "Give me all your money." Amin looked up to see a man holding a chrome gun with a brown handle on the counter and pointing it at her. The robber was Asian and approximately five feet five inches tall. He demanded all large bills, and she gave him the contents of her top cash drawer. Amin also offered the robber a packet of "bait money," but he rejected it. In an angrier tone, he ordered her to give him more money in large-denomination bills. From her second drawer, Amin gave him between four and five thousand dollars, including hundreds and fifties. The robber did not appear on the bank's surveillance video.

A bank customer, Sabra Byrd (Byrd), was waiting in line behind the robber and witnessed Amin give him money and the semiautomatic weapon he pointed at her. Byrd recalled he was an Asian male, about five feet four inches tall, in his twenties. She later identified Noche as the robber at trial.

When the robber reached the door of the bank, Byrd exclaimed, "He robbed the teller." Another customer, Trent Cooper, pursued the robber in the parking lot. As the robber was entering a car, Cooper opened the car door, saw a black billfold with currency hanging out of it in the robber's lap, and grabbed him. When women from the bank yelled that the robber had a gun, Cooper released him. Cooper remembered the man as Asian, wearing a black jacket, about five feet five inches or five feet six inches tall, in his late twenties or early thirties. The robber's car was a "silverish" two-door hatchback and looked like a 1985 or 1986 Dodge Colt or an early Honda or Mazda. Cooper did not see the man well enough to identify him again.

### 4. July 6 Vehicle Theft (Count Five)

Later that day, police responding to the Bank of the West robbery discovered a silver 1989 Mazda with the motor running and a towel over the steering column, parked less than a mile from the bank. The driver's door and gas tank locks were damaged, and the ignition had been "punched out." The car's owner had last seen the vehicle when she parked it in front of her house about a week earlier.

3

### 5. July 8 Arrest and Interview of Noche

On July 8, 2000, Noche arrived at the Newark Hilton Hotel in his white Mitsubishi Eclipse. The bellman recognized him and the car from a "wanted" flyer and called 911. The police arrested Noche without incident.

The license plate of the white Eclipse matched the license plate numbers reported by Stixrud and Wright. In a backpack inside the Eclipse, police found a chrome, .25-caliber semiautomatic gun with a wood grip. The safety was off, and the gun was loaded. The police also recovered a BB gun that looked like a semiautomatic, two glass methamphetamine pipes, tools (including a bent screwdriver, hacksaw, wire cutters, and vice grips), key blanks, a bent key, and a box of .25-caliber ammunition. The backpack also contained the damaged ignition and ignition face plate from the stolen Mazda. In Noche's wallet was $4,838, including thirty-one $100 bills, twenty-two $50 bills, and twenty $20 bills. In his hotel room, police found a bag containing two dent pullers, which could be used to punch out an ignition, and a glass methamphetamine pipe.

Detective Noey interviewed Noche following his arrest, and a redacted videotape of the interview was played for the jury. Noche told detectives he "might be persuaded" to confess if they gave him "a giant box of McDonald's or something." After ordering his food, Noche confessed to the Fremont Bank robbery.[1] He also admitted stealing a car, but denied other bank robberies, the shooting incident, and stealing a Mazda.

### 6. Identification of Noche from Photographs

On July 14, 2000, police showed Stixrud and Wright a photo array containing Noche's photograph. Stixrud was unable to identify the person who shot at them, but Wright selected Noche's photograph.[2] Byrd also selected Noche's photograph from a photographic lineup as the robber of Bank of the West, although Cooper was unable to do so and the teller, Amin, was unable to identify Noche from photographs. As mentioned previously, Fremont Bank teller Tan had also identified Noche as the Fremont Bank robber from a photographic lineup a day after the robbery.

People v. Noche, No. A098573, 2003 Cal. App. Unpub. LEXIS 7805, *3-9 (Cal. Ct. App. Aug. 18, 2003) (footnotes in original) (Resp't Ex. 1).

---

[1] Although Noche did not state the name of the bank he robbed, his references to images on the Fremont Bank surveillance tape indicate he was referring to the robbery at the Fremont Bank.

[2] While Wright also identified Noche at the preliminary hearing as the shooter, he could not make the same identification at trial, and stated that he looked "totally different" than the shooter.

4

**DISCUSSION**

I.    Standard of Review

This Court shall entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of "clearly established" federal law under 28 U.S.C. § 2254(d) is the holdings, as opposed to the dicta, of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state

court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

II.  Claims

Petitioner raises three claims for relief under § 2254: (1) prosecutorial misconduct; (2) ineffective assistance of counsel; and (3) that his sentence, "that in effect, is life without parole," constitutes cruel and unusual punishment in violation of the Eighth Amendment.

### A.  Prosecutorial Misconduct

Prosecutorial misconduct may serve as a basis for federal habeas relief. A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Habeas relief is in order only if the constitutional error had a substantial and injurious effect on the verdict, however. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).

Petitioner claims that the prosecutor committed prejudicial misconduct on three separate occasions during the rebuttal portion of her closing argument. First, Petitioner alleges that the prosecutor impugned defense counsel's integrity when she told the jury that Petitioner's counsel was attempting to persuade the jury to "break down" the case and that defense counsel was attacking the witnesses, victims, police and others. Petitioner's trial counsel did not object to this comment. Second, Petitioner alleges that the prosecutor misstated the burden of proof when she told the jury that the defense had argued that the evidence was insufficient to convict Petitioner but never asserted that he was innocent. Finally, Petitioner alleges that the prosecutor made an improper reference to Petitioner's indigent status when she told the jury that taxpayers could have paid for a gunshot residue test at Petitioner's request.

With respect to the prosecutor's latter two comments, Petitioner's counsel did object,

1 and her objections were sustained.  However, in neither of those two instances did defense
2 counsel request, or the court make, any admonition to the jury.

3 The California Court of Appeal concluded that Petitioner had waived the prosecutorial
4 misconduct claims by either failing to object to the prosecutor's remarks at trial or failing to
5 request an admonition:

> As to the prosecutor's innocuous comment regarding defense counsel's attack on the evidence, Noche failed to lodge an objection. He has waived his right to challenge the prosecutor's comment.
>
> Noche objected to the two other challenged comments by the prosecutor, and his objections were sustained. He did not, however, request the court to admonish the jury to disregard them. To the extent he now argues the court erred by failing to give an admonition, he waived his claim by not requesting any admonition. Noche has likewise waived any claim that the prosecutor's comments require reversal. The purpose of an admonition in this context is to cure the potential harm of the prosecutor's statements. The failure to request an admonition - and thereby appear satisfied that the trial court's sustaining of the objection was sufficient to remedy the misconduct–waives the right to seek reversal on the ground the misconduct was prejudicial.

People v. Noche, 2003 Cal. App. Unpub. LEXIS 7805, at *14 (footnote omitted).

Federal habeas review of a claim is barred in all cases where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule.  Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1983)).  "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994).  In California, a defendant may not complain on appeal of prosecutorial misconduct unless he lodges a timely objection to the alleged misconduct and requests that the jury be admonished.  People v. Hill, 17 Cal. 4th 800, 820 (1998).  The Ninth Circuit consistently has held that California's contemporaneous objection rule is an adequate procedural bar to federal habeas review.  See Davis v. Woodford, 384 F.3d 628, 653-54 (9th Cir. 2004); Vansickel, 166 F.3d at 957-58; Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981).  The California Court of Appeal's invocation of the contemporaneous objection rule here accordingly precludes federal review of Petitioner's

7

prosecutorial misconduct claim unless Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. Petitioner makes no such showing. Therefore, his prosecutorial misconduct claim is barred from federal habeas review. See Davis, 384 F.3d at 653-54 (finding Sixth Amendment claim procedurally barred where state appellate court found claim waived because petitioner failed to raise it below)[3].

### B. Ineffective Assistance of Counsel

Petitioner claims that he was deprived of effective assistance of counsel when his trial attorney did not object to the prosecutor's characterization of the defense strategy and did not request an admonition to the jury in connection with two other defense objections sustained by the trial court. In essence, Petitioner is seeking to avoid the procedural bar to his prosecutorial misconduct claims by asserting that his trial counsel's failure to object to the prosecutor's remarks amounted to ineffective assistance of counsel.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.

To succeed on a Sixth Amendment claim for ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's performance was deficient in that it fell below an "objective standard of reasonableness . . . under prevailing professional norms;" and (2)

---

[3] Petitioner's prosecutorial misconduct claims would not entitle him to federal habeas relief even if such claims were not deemed procedurally defaulted. For the reasons set forth in the next section, the California Court of Appeal's determination that Petitioner failed to establish "prejudicial prosecutorial misconduct" in the context of his ineffective assistance of counsel claim, People v. Noche, 2003 Cal. App. Unpub. LEXIS 7805, at *21, was not objectively unreasonable. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409; Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004).

prejudice flowed from the counsel's infirm performance. Strickland, 466 U.S. at 687-88.

As to the first prong, relating to whether defense counsel's performance was deficient, the relevant inquiry is not what counsel could have done, but rather whether the choices made by defense counsel were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. In addition, a court must analyze ineffective assistance of counsel claims from counsel's perspective at the time of the representation so as to "eliminate the distorting effects of hindsight." Id.

To satisfy the secondary prejudice prong, a petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

To prove prejudice under Strickland arising from counsel's failure to file a motion, or as is the case here, for failure either to lodge an objection to comments by the prosecutor or to request an admonition, the petitioner must show that: (1) had his counsel made the objection or request for admonition, it is reasonable to believe that the trial court would have granted it as meritorious; and (2) had the objection or request for admonition been granted, it is reasonable to believe that there would have been an outcome more favorable to him. See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

Petitioner's first claim is that his counsel was ineffective for failing to object to the prosecutor's comment during closing argument that the defense strategy consisted of seeking to "break down the case" into many small puzzle pieces and of attacking witnesses, victims, police, the investigation and the prosecution. Petitioner alleges that these comments had the effect of improperly questioning the integrity of his attorney and belittling the defense strategy.

The California Court of Appeal rejected Petitioner's contentions, finding that this

9

remark by the prosecutor did not amount to misconduct.  Quoting Darden, 477 U.S. at 181, the appellate court correctly noted that prosecutorial comment is reversible as misconduct under the federal Constitution only when it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."  People v. Noche, 2003 Cal. App. Unpub. LEXIS, 7805, at *15.  The court concluded that there was no reasonable likelihood that the jury understood the remark at issue as improper and, in any event, no prejudice arose from counsel's failure to object to the prosecutor's innocuous comment.  Id. at **16-17, 23.

The state court's rejection of Petitioner's claim was not objectively unreasonable.  See 28 U.S.C. § 2254.  The prosecutor's comment was not a deceptive attempt to persuade the jury.  Petitioner's counsel was not ineffective for failing to lodge a meritless objection to the prosecutor's remark.  See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

Next, Petitioner claims that his counsel was constitutionally inadequate because on two other occasions defense counsel failed to seek remedial action, in the form of an admonition to the jury, following successful objections.  These two objections by Petitioner's counsel to comments by the prosecutor had been sustained by the court.

In the first of these latter two instances, Petitioner argues that the prosecutor improperly made an "unsubtle reference to appellant's indigent status" and suggested that Petitioner should be punished for his poverty in suggesting that the taxpayers, and impliedly, jurors, would bear the costs of conducting gunshot residue testing if Petitioner "complained" about the expense.  The California Court of Appeal first found that the prosecutor's comments on this topic did not amount to misconduct: "There is no reasonable likelihood the jury would have thought the prosecutor was calling attention to Petitioner's indigency, let alone suggesting the jury should penalize him for it."  People v. Noche, 2003 Cal. App. Unpub. LEXIS 7805, at *18.  Consequently, the appellate court concluded that Petitioner's counsel's failure to request an admonition after her objection to this comment was sustained did not deviate from reasonable professional standards.  Id. at *23.  Defense counsel may have made a tactical decision that asking for an admonition may have just highlighted the

10

very comment she and the court deemed objectionable. See id. (And in any event, the court determined that no prejudice resulted from the failure to request the admonition. See id. at *24-25.)

In the second of the latter two remarks, the prosecutor asserted that Petitioner had never claimed he was innocent of the charges, but merely argued that the evidence was insufficient to warrant a conviction. The California Court of Appeal found the comment "inappropriate to the extent it suggested the defense was conceding [Petitioner] committed the crime or had an obligation to prove his innocence." Id. at *19. As noted by the California Court of Appeal, however, this remark did not go unchallenged. Id. Petitioner's counsel interposed an objection, which the court sustained. Id. The jury also received instructions concerning its obligation to follow the instructions of law, that Petitioner was presumed innocent, and that the prosecution had the burden of proving him guilty beyond a reasonable doubt. Id. The California Court of Appeal accordingly concluded that given these circumstances, there was no reasonable likelihood that the prosecutor's comment would have misled the jury as to the proper burden of proof. Id. at *19-20. The appellate court also determined that no prejudice arose from Petitioner's counsel's failure to request a jury admonition.

The California Court of Appeal's rejections of Noche's second and third claims, relating to his counsel's failure to request jury admonitions, were objectively reasonable. See 28 U.S.C. § 2254. As summarized by the appellate court, the evidence of Petitioner's guilt was "overwhelming":

> In the present case, the Fremont Bank robbery was committed by an Asian-appearing man, about five feet five inches tall, with a chrome gun. Noche met this physical description, was found to possess a similar gun, was identified by the teller as the robber, was caught on the bank's surveillance tape, and confessed he was the robber. The Bank of the West robbery was also committed by an Asian-appearing man, about five feet four to six inches tall, with a chrome gun, who (like the Fremont Bank robbery) set the gun on the counter pointing toward the teller, demanded currency in large denominations, and instructed the teller to give him the money from the second cash drawer. Noche not only met this description, but he was positively identified by an eyewitness as the robber. As to the vehicle shooting incident, the shooter was described as an Asian-appearing male

11

> who shot a chrome handgun from a white Mitsubishi Eclipse. Five days after the incident Noche was driving his white Mitsubishi Eclipse with a license plate that matched the license numbers provided by victims Stixrud and Wright, while in possession of a chrome handgun. In his interview with police, Noche stated he had not loaned his car to anyone. Noche also had in his possession thousands of dollars in large denomination bills, as well as the ignition for the stolen car used in the Bank of the West robbery. In the face of this mountain of evidence, it is absurd to think he would have obtained a more favorable outcome simply by his trial counsel asking the court to admonish the jury after the court had sustained objections to a couple of statements by the prosecutor. Beyond a reasonable doubt, any claimed deficiencies of defense counsel did not contribute to the jury's verdicts.

People v. Noche, 2003 Cal. App. Unpub. LEXIS 7805, at *24-25.

In sum, Petitioner's counsel's failures to object and request admonitions did not amount to deficient performance and, in any event, did not result in prejudice under Strickland. There is no reason to believe that the admonitions, if sought and given, would have led to a more favorable result in the case for Petitioner. See Wilson, 185 F.3d at 990. The California Court of Appeal's rejection of Petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on these claims.

### C. Cruel and Unusual Punishment

Petitioner claims that his life sentence under California's Three Strikes Law constitutes cruel and unusual punishment in violation of the Eighth Amendment.

#### 1. Exhaustion

A state prisoner must exhaust a federal constitutional claim in state court before a federal court may consider the claim. 28 U.S.C. § 2254(b)(1)(A), (c); Rose v. Lundy, 455 U.S. 509, 515-16 (1982); McNeeley v. Arave, 842 F.2d 230, 231 (9th Cir. 1988). Section 2254(b) requires dismissal of a petition containing both exhausted and unexhausted claims. Rose, 455 U.S. at 510 (1982); Guizar v. Estelle, 843 F.2d 371, 372 (9th Cir. 1988). Exhaustion typically requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process." Greene v. Lambert, 288 F.3d 1081, 1086 (9th Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). However, exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the state's highest court. See Castille v. Peoples, 489 U.S. 346, 350 (1989); Greene, 288 F.3d at 1086-87; Turner v. Compoy, 827 F.2d 526, 528 (9th Cir. 1987). The exhaustion-of-state-remedies doctrine reflects a policy of federal-state comity to give the state "the initial 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted).

Respondent contends that Petitioner's Eighth Amendment claim is moot because the California Court of Appeal vacated his initial 104-years-to-life sentence, and so any claim challenging his subsequently imposed sentence of 158 years to life is unexhausted.

The Court finds that Petitioner's claim that the "life sentence" he received violates the Eighth Amendment is exhausted. The exhaustion requirement is satisfied because whether the sentence is 104 years to life or 158 years to life in prison, the result in this case, especially in light of Petitioner's age (38), is the same: he is serving a life term. There is no functional difference between the two terms of imprisonment. The California Court of Appeal rejected Petitioner's cruel-and-unusual-punishment challenge of his "life sentence." By fully presenting his challenge of his "life sentence" to a complete round of state appellate review, Petitioner properly exhausted this federal constitutional claim and this Court may consider it.

### 2. Cruel and Unusual Punishment

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 23 (2003) (citations omitted).

The Supreme Court in recent years has made clear that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework [in 28 U.S.C. § 2254(d)(1)] is the gross disproportionality principle," which is applicable only in "exceedingly rare" and "extreme" cases. Lockyer v. Andrade, 538 U.S. 63, 73 (2003). In

13

determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004); Compare id. (holding that sentence of 25 years to life for petty theft with prior conviction was grossly disproportionate to crime where previous two strikes did not involve violence and where both strikes were the result of one negotiated plea resulting in a one-year county jail sentence) with Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (holding that sentence of 25 years to life not grossly disproportionate for conviction of petty theft with a prior where defendant struggled with guard to prevent apprehension and prior convictions of robbery involved threat of violence "because his cohort used a knife").

In this case, Petitioner was sentenced pursuant to California's Three Strikes Law, which is triggered when a defendant is convicted of a felony, and he has suffered one or more prior "serious" or "violent" felony convictions. See Cal. Penal Code § 667(e)(2)(A). Under California's Three Strikes Law, any felony conviction can constitute the third strike and subject a defendant to a term of 25 years to life in prison. Lockyer, 538 U.S. at 67.

Petitioner's triggering offenses consisted of two armed bank robberies, the "road rage" shooting at two people in a car on the San Mateo Bridge, and the theft of a car used in connection with one of the bank robberies. At the time of these offenses in July 2000, Petitioner was on parole, having served eight years of a 14-year sentence imposed in connection with an incident in 1990 in which Petitioner committed an armed commercial robbery and opened fire on law enforcement officers with an AK-47 assault rifle during an ensuing pursuit. Resp't Ex. 7B. Petitioner, now 38 years old, is no stranger to the criminal justice system. He had suffered six felony convictions prior to his convictions for the instant offenses. He has demonstrated a propensity for crimes of violence, and his criminal record depicts an escalating pattern of criminal behavior. Petitioner has repeatedly shown an unwillingness to abide by society's rules and a willingness to use firearms in the commission of criminal acts. He poses a significant danger to society and his sentence, though lengthy, does not qualify as the kind of "extraordinary" punishment forbidden by the Eighth

14

1 Amendment.  See Lockyer, 538 U.S. at 77.  Petitioner's sentence is justified by the state's
2 public safety interests in incapacitating and deterring recidivist felons, and supported by his
3 own criminal history.  See Ewing, 538 U.S. at 29-30.

In denying his request for state habeas relief, the California Court of Appeal noted:

> As to the instant offenses, Noche shot at two people in a car traveling on a bridge on a public highway, stole a car and used it to perpetrate a bank robbery, and committed two bank robberies with the same gun he had previously used to shoot at others. Five of the six charged crimes were violent and serious felonies. (§§ 667.5, subd. (c)(8) & (9), 1192.7, subd. (c)(8).) Further, the gravity of his present offenses must be assessed in light of his criminal history. [See Solem v. Helm, 463 U.S. 227, 296 (state is justified in punishing a recidivist more severely than it punishes a first offender); People v. Cooper, 43 Cal. App.4th 815, 820-25 (1996)]  Noche had previously received a 14 year prison sentence for robbery, in which he used an assault rifle, and for shooting the assault rifle at sheriff's deputies. It was while he was on parole for these crimes that he committed the instant offenses. Noche plainly presents a danger to the community. [See In re Lynch, 8 Cal. 3d 410, 425 (1972).]

People v. Noche, 2003 Cal. App. Unpub. LEXIS 7805, at *28-29.

Based on Petitioner's history of criminal recidivism, which includes crimes of violence, his sentence cannot be said to be grossly disproportionate in violation of the Eighth Amendment.  See Rios, 390 F.3d at 1086.  The state court's rejection of Petitioner's cruel and unusual punishment claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor did it involve an objectively unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

After a careful review of the record and pertinent law, the Court is satisfied that the Petition for a Writ of Habeas Corpus must be DENIED.

The clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: July 21, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

15